IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JAMES GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 13-2715-JDT-dkv |
| | ) | |
| DERRICK SCHOFIELD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Plaintiff James Green, formerly an inmate at the West Tennessee State Penitentiary ("WTSP"), filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, against Tennessee Department of Correction Commissioner Derrick Schofield, WTSP Warden Stanley Dickerson, Investigator Robert Munford, Counselor Norman Layne, Sergeant Bill Tate, Classification Coordinator Deny Yeager, Correctional Officer Roger Medkiff,[1] and Unit Manager Sharon Rose. In an order entered on May 14, 2014, the court dismissed the claims against Defendants Schofield and Dickerson for failure to state a claim on which relief may be granted and ordered service of process for Defendants Munford, Layne, Tate, Yeager, Medkiff, and Rose.

Defendants have filed a motion for summary judgment [DE# 62]. Plaintiff has not

---

[1] It appears that the correct spelling of Defendant Medkiff's name is "Midkiff." However, the court has used the original spelling of Defendant's name since this is the spelling reflected in the pleadings.

responded to the motion. For the reasons set forth below, Defendants' motion is GRANTED.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Revised Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[2] or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials– including the facts considered undisputed–show that the movant is

---

[2] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

>     entitled to it; or
>
> (4)     issue any other appropriate order.

Fed. R. Civ. P. 56(e).

In Celotex Corp., the Supreme Court explained that Rule 56:

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"

Id. at 252; see also Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). However, the court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

The fact that Plaintiff did not respond does not require granting Defendants' motion. Nevertheless, if the allegations of the complaint are contravened by Defendants' evidence and Defendants are entitled to judgment as a matter of law on those facts, then summary judgment is appropriate. Smith v. Hudson, 600 F.2d 60, 65 (6th Cir. 1979).

In the complaint, Plaintiff alleges that, because he walked away from a gang fight during a basketball game, his life was in danger from Crips gang members. On February 22, 2013, Plaintiff placed himself in protective custody. Two days later, Plaintiff allegedly explained his situation to Defendant Munford, who agreed that Plaintiff needed administrative protection because his life was in danger.

On March 4, 2013, Plaintiff had a protective custody hearing with Defendant Yeager and Defendant Layne. Defendant Yeager allegedly told Plaintiff that he did not have a good reason for protective custody and that Yeager would recommend to Defendant Dickerson that Plaintiff be returned to the general population. Plaintiff further alleges that he pled with Defendants Yeager and Layne for continued protective custody. However, he was removed

4

from protective custody that same day.

When he arrived at Unit Eight, he allegedly explained his situation to Counselor Evelyn Binkley, who told Plaintiff that she would make a note of it and pass it on to Defendant Munford. On March 8, 2013, Plaintiff was allegedly told to pack his property because he was being sent to general population at Site 1. Plaintiff refused, telling the officer that his life would be in extreme danger. The C.E.R.T. was called to Plaintiff's cell. Defendant Medkiff, a member of the C.E.R.T., spoke with Plaintiff. Plaintiff explained that his life would be in danger if he was sent to general population. Defendant Medkiff told Plaintiff that he would call Defendant Munford and follow Munford's decision.

Defendant Rose came and told Plaintiff to pack his belongings because he was going to general population. Plaintiff allegedly explained his situation to Defendant Rose, but she told him that the release papers had already been signed by Defendant Dickerson. Defendant Rose told Plaintiff that, if he felt threatened, he should check back in to protective custody. Plaintiff was assigned to a cell in Site 1, Unit 12, immediately requested protective custody, but protective custody was refused.

On March 10, 2013, Plaintiff was allegedly attacked by a Crips gang member during recreation. Plaintiff returned to Unit 12 where a pod officer radioed for help. Plaintiff was treated at the prison infirmary and then taken to an outside hospital for additional treatment. Defendant Munford allegedly denied that Defendant Medkiff had called him about the decision to return Plaintiff to general population. On March 11, 2013, Plaintiff was returned to protective custody.

Defendants have presented the following statement of undisputed facts. Plaintiff was in the custody of the Tennessee Department of Correction and housed at WTSP during all relevant events. On or about February 22, 2013, Plaintiff placed himself in protective custody after reporting that he felt threatened by fellow members of the Crips gang. Affidavit of Robert Mumford, ¶ 3. Plaintiff was placed in "Pending Investigation Protective Custody" until a review hearing could be conducted.

On March 4, 2013, a three-member panel consisting of Defendants Layne, Tate, and Yeager heard testimony from Plaintiff regarding whether he had a need for continued placement in protective custody. Affidavit of Norman Layne, ¶ 3. At the hearing, Plaintiff told the panel members that he could be safely released to Site One at the prison. His request was granted because the panel had no evidence to contradict Plaintiff's own assurances. Affidavit of Bill Tate, ¶ 7.

When Plaintiff's release from protective custody was approved by the Deputy Warden on March 3, 2013, he was assigned to a cell on Site One, and another incoming protective custody inmate was assigned to Plaintiff's protective custody cell. Affidavit of Sharon Rose, ¶ 7. Defendant Rose went to Plaintiff's cell and asked him to pack his belongings, which he did voluntarily. Id., ¶ 5. Plaintiff never told Defendant Rose that he was in danger or that he feared for his life or safety, and he did not appear to be in distress. Id. ¶ 6. He merely said that he was "unable" to go to general population. Id.

Defendant Rose told Plaintiff that, if he did not feel he was able to go to the compound, he needed to tell the escorting officer who picked him up that he did not want to

go to general population and ask that he be taken directly to the Captain's office. Id. ¶ 8. In his grievance, Plaintiff admitted that "I.R.C. Rose further said if the grievant felt threatened check back in and we'll start the process over." Institutional Grievance Number 35517. Had Plaintiff requested to be checked back in to protective custody, he would have been taken to a secure cell, and the protective custody process would have started all over again. Rose Affidavit, ¶ 8.

Alternatively, Plaintiff could have refused a cell assignment if he had concerns about his safety. Id. ¶ 12. The act of refusing his cell assignment would initially have been treated as a disciplinary infraction, and the resulting disciplinary hearing would have given Plaintiff another opportunity to express concerns about his safety. Plaintiff would have been housed in a secure cell, pending the outcome of that hearing. Affidavit of Robert Mumford, ¶ 13. Should an inmate's refusal of a cell assignment result in the discovery of legitimate safety concerns, a disciplinary charge is not assessed against the inmate who refused his cell assignment. As would have been the case if he had checked himself back into protective custody, Plaintiff would have been segregated, and the protective custody review process would have started anew. Rose Affidavit, ¶ 12; Affidavit of Evelyn Binkley, ¶ 6.

Evelyn Binkley, a correctional counselor, also had contact with Plaintiff on the day that he was released from protective custody. As Plaintiff left her unit, she advised him that, if he had any problems with his new cell assignment, to tell someone immediately and he would be placed in a secure cell until another hearing could be conducted. Binkley Affidavit, ¶ 6. Plaintiff could have requested protective custody again between the moment he left Ms.

Binkley's unit and the time that he was assaulted, and his request would have been honored. Id., ¶ 8. Had Plaintiff asked for protective custody as soon as he walked out of the door to her unit, he would not have been released into general population. Id.

On March 10, 2013, Plaintiff was assaulted on the recreation yard at Site One and was taken to an outside hospital for treatment. Plaintiff would not cooperate with the investigation into the assault, and it was never determined whether there was a connection between Plaintiff's initial request to be placed in protective custody and the assault. Mumford Affidavit, ¶ 7, 9.

The Eighth Amendment prohibits the intentional infliction of cruel and unusual punishment on an inmate, Wilson v. Seiter, 501 U.S. 294, 297 (1991), which encompasses an inmate's right to personal safety. Stewart v. Love, 796 F.2d 43, 44 (6th Cir. 1982). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson, 501 U.S. at 298. The objective component requires that the deprivation be sufficiently serious. Farmer, 511 U.S. at 834; Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298. The subjective component requires that the official act with the requisite intent; that is, that he have a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 297, 302-03. The official's intent must rise at least to the level of deliberate indifference. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.

The Eighth Amendment thus requires a serious threat to the inmate's personal safety. Knight v. Gill, 999 F.2d 1020, 1022 (6th Cir. 1993); Nelson v. Overberg, 999 F.2d 162, 165

(6th Cir. 1993); Marsh v. Arn, 937 F.2d 1056, 1060 (6th Cir. 1991); Walker v. Norris, 917 F.2d 1449, 1454 (6th Cir. 1990); Roland v. Johnson, 856 F.2d 764, 769 (6th Cir. 1988); McGhee v. Foltz, 852 F.2d 876, 881 (6th Cir. 1988). In evaluating the types of conditions that constitute a substantial risk of serious harm, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, i.e., that society does not choose to tolerate this risk in its prisons. Helling v. McKinney, 509 U.S. 25, 36 (1993).

The Supreme Court has also clarified the subjective component: the intent of the prison official. See, e.g., Farmer, 511 U.S. at 834. Cf. Wilson, 501 U.S. at 299-300; Caldwell v. Moore, 968 F.2d 595, 602 (6th Cir. 1992). Under Farmer, deliberate indifference requires that the inmate show that an officer "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Cf. Walker, 917 F.2d at 1454 (prison official displays deliberate indifference when "he causes unnecessary and wanton infliction of pain on the [inmate] by deliberately disregarding a serious threat to the [inmate]'s safety after actually becoming aware of that threat"). Thus, the "'deliberate indifference' of a constitutional magnitude may occur when prison guards fail to protect one inmate from an attack by another inmate." Id. at 1453. However, even a prison official who actually knew of a substantial risk to an inmate's safety may avoid liability under the Eighth Amendment if he

9

responded reasonably to the risk, even if harm ultimately was not averted. Street v. Corr. Corp. of Am., 102 F.3d 810, 815-16 (6th Cir. 1996) (quoting Farmer, 511 U.S. at 837-38).

## Protective Custody Review Panel

Plaintiff alleges that he told the protective custody review panel, Defendants Layne, Tate, and Yeager, that his life would be in danger if he were to be placed in general population. However, Defendants have presented evidence that Plaintiff told them at the hearing that, while he feared for his safety at Site 2, he could safely be released into general population on Site 1. Affidavit of Denys Yeager, ¶ 3; Tate Affidavit, ¶ 3; Layne Affidavit, ¶ 3. Therefore, the panel recommended that Plaintiff be released into general population to Site 1. The panel contemporaneously completed a Protective Services Hearing form which stated as follows, "Inmate fears for his life on Site 2, but feels he can go to Site 1, Unit 11. Panel recommended release to Site 1, Unit 11." Layne Affidavit, Exhibit B. The form was signed in Plaintiff's presence. Dickerson Affidavit, Exhibit A. Had Plaintiff expressed concern for his safety on Site 1, he would not have been released from protective custody; he would have been kept in protective custody at the WTSP or moved to another institution. Layne Affidavit, ¶ 4, 5; Yeager Affidavit, ¶ 6; Tate Affidavit, ¶ 7.

Because the evidence shows that Plaintiff assured the panel that he felt safe being released into general population on Site 1 and because he did not alert these defendants to any imminent threat, Defendants did not disregard a serious risk to Plaintiff's safety. See Hudson, 468 U.S. at 526 (Prison officials have a duty to act reasonably in protecting an inmate from a known risk.) Therefore, Defendants Layne, Yeager, and Tate are entitled to

10

summary judgment.

## Defendants Rose, Medkiff, and Munford

Defendant Sharon Rose relied on an order that was given to her by Central Control - the Protective Services Hearing report - which indicated that Plaintiff was to be moved to Site 1. Rose Affidavit, ¶ 2, 3. Defendant Rose had no authority to disregard those instructions, and had no reason to believe that she should question them. Id. ¶ 3. Because Plaintiff never indicated to Defendant Rose that his life was in danger, she did not have a valid reason to disregard the order to release Plaintiff back into general population. Id. ¶ 6.

Even if Defendant Rose was aware of a serious risk to Plaintiff's safety, she did not disregard such a risk. Defendant instructed Plaintiff about how to check himself back into protective custody if he felt it was needed. Id. ¶ 6, 8. This fact is admitted by Plaintiff in the grievance he filed after he was assaulted and is in his complaint ("I.R.C. Rose further said if the grievant felt threatened check back in and we'll start the process over.") Inmate Grievance, P. 5; Complaint, P. 10. Because Defendant Rose was unaware of a risk, but nevertheless took measures to ensure that Plaintiff had a way to protect himself from possible harm when he was released from protective custody, Defendant Rose is entitled to summary judgment.

Roger Medkiff was a correctional officer at the time of the alleged incident. Defendant Medkiff does not have a specific recollection of his contact with Plaintiff on the date in question, nor does he recall Plaintiff reporting concerns to him about his safety. Affidavit of Roger Medkiff, ¶ 3. Had Plaintiff expressed concerns to Defendant Medkiff about his safety,

11

Defendant would have reported such concerns to his immediate supervisor. Id. Moreover, Plaintiff was instructed by his last two points of contact as he left his unit, Sharon Rose and Evelyn Binkley, what he should do if he felt threatened. Thus, while there is no evidence that Defendant Medkiff knew of concerns to Plaintiff's safety and disregarded them, at least two of Defendant's supervisors had contact with Plaintiff after his alleged conversation with Defendant and did take measures to ensure Plaintiff's safety. For these reasons, Defendant Medkiff is entitled to summary judgment.

Defendant Mumford was working as the Institutional Security Threat Group ("STG") Investigator at the time of the relevant events. Defendant Mumford was tasked with investigating the fight which Plaintiff asserted as the basis for his request to be placed in protective custody. Mumford Affidavit, ¶ 2. Defendant's purpose in gathering evidence from Plaintiff was not related to his placement in protective custody, and his investigation was not conducted at the request of or for the benefit of the protective custody review panel. Id. ¶ 4, 8. Instead, it was solely for the purpose of monitoring and attempting to manage gang activity in the prison. Defendant was not called to testify at the protective custody review hearing, nor is there evidence that the panel knew that Defendant was conducting an independent investigation. Id. ¶ 5. Defendant had nothing to do with the panel's decision to release Plaintiff into general population and only heard that he had been assaulted after receiving a telephone call at his home. Id. ¶ 5-7. Defendant could not have disregarded a risk to Plaintiff because he believed that Plaintiff was still being held in protective custody and had not been told that he might be released. Id. ¶ 5, 6.

Furthermore, Plaintiff refused to cooperate with Defendant Mumford's investigation into the alleged assault on Plaintiff. Id. ¶ 7, 9. Plaintiff would not identify those inmates who were suspected of attacking him, and no one was ever charged with his assault. Id. Therefore, even if Plaintiff did tell the panel that he would be at risk if released into general population, there is no evidence that the risk he complained of actually materialized or whether Plaintiff was attacked for reasons unrelated to those claims he initially raised when requesting to be placed in protective custody. Accordingly, Defendant Mumford is entitled to summary judgment.

The unrefuted evidence shows that Defendants did not violate Plaintiff's civil and constitutional rights. Therefore, they are entitled to judgment as a matter of law. The motion for summary judgment is GRANTED. The clerk is DIRECTED to entered judgment accordingly.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE